**Thomas K. REED, Jr. Plaintiff-Appellant, Cross-Appellee,**

**v.**

**AAACON AUTO TRANSPORT, INC., a New York corporation, Defendant-Appellee, Cross-Appellant.**

Nos. 78–1924, 78–1959.

United States Court of Appeals, Tenth Circuit.

Argued May 9, 1980.

Decided April 3, 1981.

Rehearing Denied April 30, 1981.

Richard D. Yeomans, Albuquerque, N. M., for Thomas K. Reed, Jr.

Ralph J. Zola, New York City (Richard S. Birnbaum, New York City, of counsel, with him, on brief), for Aaacon Auto Transport, Inc.

Before BARRETT, DOYLE and LOGAN, Circuit Judges.

LOGAN, Circuit Judge.

These appeals arise out of an action brought by Thomas K. Reed, Jr., against Aaacon Auto Transport, Inc., because Aaacon failed to deliver Reed's automobile pursuant to their written contract. Aaacon appeals from an order denying its motion for partial summary judgment by declaration of law, and from those portions of the final judgment awarding Reed actual, consequential, and punitive damages. Reed cross-appeals from that part of the final judgment denying him recovery of attorneys' fees.

In November 1976 Aaacon contracted in writing to transport Reed's 1974 Alfa Romeo automobile from Albuquerque, New Mexico to Terminal Island, California. The delivery was never accomplished. On December 14, 1976, Reed's attorney sent a written claim to Aaacon demanding payment equal to the fair market value of the missing automobile plus expenses incurred by Reed as a result of loss of its use. On February 4, 1977, in response to a letter received from Aaacon's claim department, Reed filed Aaacon's standard claim form in which he reasserted his previous demands.

In April 1977 Reed was informed that his Alfa Romeo had been found on the premises of a sports car dealership in San Antonio, Texas, its body battered, its interior and convertible top torn and tattered, and its engine locked up. At that time, Reed demanded that Aaacon pay for all necessary repairs; but after learning that the car's engine was virtually ruined and complete restoration was impossible, Reed demanded payment equal to the fair market value at the time of tender to Aaacon, less the present salvage value, plus incidental expenses. Although Aaacon never denied liability, it refused to consider Reed's theory of compensation, being willing to pay only for repair of the car by mechanics of its own choosing. After giving Aaacon an opportunity to purchase, Reed sold the car in June 1977 for an amount found to be $50 above its then fair market value. This litigation followed.

### Actual Damages

Aaacon argues that the Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 20(11), preempts all common law rules applicable to carrier liability and computation of damages. We rejected that argument in *Litvak Meat Co. v. Baker*, 446 F.2d 329 (10th Cir. 1971), and *L. E. Whitlock Truck Service, Inc. v. Regal Drill-*

*ing Co.*, 333 F.2d 488 (10th Cir. 1964), holding that common law remedies or rights of action remain available to shippers in the position of Reed.

■ Aaacon contends that the district court's award of $4450 in actual damages, representing the difference between the fair market value of the automobile at the time of its tender to Aaacon ($6000) and its salvage value ($1550), is not supported by the weight of evidence. Aaacon argues that Reed was obligated to mitigate damages by accepting Aaacon's offer to repair the automobile at its own expense rather than insisting on the diminution in value ultimately awarded by the trial court. As a general rule, when property is damaged in shipment, the formula for determining the amount of damages is the difference between tne market value the property would have had if it had been transported safely and the market value of the property in its damaged condition. *Gulf, Colo. & S.F. R.R. v. Texas Packing Co.*, 244 U.S. 31, 37 S.Ct. 487, 61 L.Ed. 970 (1917); *Olsen v. Railway Express Agency*, 295 F.2d 358, 359 (10th Cir. 1961); *Illinois Central R.R. v. Zucchero*, 221 F.2d 934, 937 (8th Cir. 1955). The rule that one must mitigate or minimize damages "has no application where the measure of damages is the market value of the property before and after damage." *Great Am. Ins. Co. v. Railroad Furniture Salvage*, 276 Ala. 394, 162 So.2d 488, 495 (1964); *Birmingham Ry., Light & Power v. Long*, 5 Ala.App. 510, 59 So. 382 (1912). It applies to the time during which damages are accruing, not to the election of remedies after damages have occurred. *See Buhl Highway Dist. v. Allred*, 41 Idaho 54, 238 P. 298, 304 (1925). The duty to mitigate damages is a concept of avoidance, not repair. *National Steel Corp. v. Great Lakes Towing Co.*, 574 F.2d 339, 343 (6th Cir. 1978). Reed's only duty as to the car, once it was discovered, was to prevent its further deterioration.

We conclude the district court properly based its award of damages upon the difference between the fair market value of the car at the time of delivery to Aaacon and the value of the car in its damaged condition.

*Special and Consequential Damages*

■ Aaacon also contends the district court erred in awarding special damages to compensate Reed for the loss of use of his automobile and consequential damages to reimburse Reed for expenses incurred in locating and ultimately disposing of his damaged automobile. It is argued that such damages were not within the contemplation of the parties at the inception of their contract. *See Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145, 5 Eng.Rul.Cas. 502 (1854); *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544, 23 S.Ct. 754, 755, 47 L.Ed. 1171 (1903); *Marquette Cement v. Louisville & Nashville R.R.*, 281 F.Supp. 944, 948 (E.D.Tenn.1967), *aff'd per curiam*, 406 F.2d 731 (6th Cir. 1969). The Restatement of Contracts articulates the rule in terms of "foreseeability":

> "In awarding damages, compensation is given for only those injuries that the defendant had reason to foresee as a probable result of his breach when the contract was made. If the injury is one that follows the breach in the usual course of events, there is sufficient reason for the defendant to foresee it; otherwise, it must be shown specifically that the defendant had reason to know the facts and to foresee the injury."

Restatement of Contracts, § 330 (1932). McCormick has stated with respect to the rule of *Hadley v. Baxendale*:

> "This standard is in the main an objective one. It takes account of what the defendant who made the contract might then have foreseen as a reasonable man, in the light of the facts known to him, and does not confine the inquiry to what he actually did foresee. If the loss claimed is unusual, then it becomes necessary to ascertain whether the defaulting party was notified of the special circumstances . . . ."

C. McCormick, Handbook on the Law of Damages 595 (1932) (footnote omitted). It

is well settled that the Carmack Amendment does not alter the common law with respect to special damages. *F. J. McCarty Co. v. Southern Pac. Co.*, 428 F.2d 690, 693 (9th Cir. 1970); see *L. E. Whitlock Truck Service, Inc. v. Regal Drilling Co.*, 333 F.2d 488, 491 (10th Cir. 1964). Special damages are recoverable from a carrier when it has "notice or knowledge of the special circumstances from which such damages would flow." *Conditioned Air Corp. v. Rock Island Motor Transit Co.*, 253 Iowa 961, 114 N.W.2d 304, *cert. denied*, 371 U.S. 825, 83 S.Ct. 46, 9 L.Ed.2d 64 (1962).

■ Aaacon argues that consequential or special damages in the instant case are precluded by language in clause 3 of the freight bill-order form, stating that "Aaacon is not responsible for car rentals or any other special damages, including nonuse of the vehicle." Clause 3 is an invalid attempt to limit liability. The Carmack Amendment, 49 U.S.C. § 20(11), expressly states that "any limitation of liability or limitation of the amount of recovery . . . in any contract . . . without respect to the manner or form in which it is sought to be made is declared to be unlawful and void." An exception is provided with respect to

> "property . . . received for transportation concerning which the carrier shall have been or shall be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, in which case such declaration or agreement shall have no other effect than to limit liability and recovery to an amount not exceeding the value so declared or released."

49 U.S.C. § 20(11). The exception is clearly inapplicable in this case; Aaacon does not establish or maintain rates for its automobile transport services that are dependent upon the automobile values declared in writing by its customers. The district court properly ignored the invalid exculpatory clause in determining whether special or consequential damages were contemplated by the parties.

■ We find sufficient evidence in the record to support the court's conclusion that Aaacon was aware of Reed's potential damages in the event it failed to deliver the automobile as agreed. It has been suggested with respect to contracts of carriage that

> " '[i]t is not necessary always that [facts of potential special damage] should be mentioned in the negotiations, or in express terms made a part of the contract, but when they are known to the carrier under such circumstances, or they are of such character that the parties may be fairly supposed to have them in contemplation in making the contract, such special facts become relevant in determining the question of damages.' Moore on Carriers, p. 425; Hutchinson on Carriers, § 1367."

*Harrill v. Seaboard Airline Ry.*, 181 N.C. 315, 107 S.E. 136 (1921). Generally, when a shipper loses the use of his goods as a proximate result of delay "and the carrier has notice or knowledge of facts that would apprise it that plaintiff would sustain loss in that particular, the measure of damages is the value of the use during the time of delay." *Louisville & N. R.R. v. Cheatwood*, 14 Ala.App. 175, 68 So. 720, 721–22 (1915). Considering Aaacon's extensive experience in the automobile transport industry, it was not unreasonable for the district court to conclude that Aaacon was aware that Reed's private automobile was his principal if not sole means of transportation and that Reed would necessarily incur expenses in acquiring a substitute vehicle.

Reed's expenses, including storage fees, damage estimate fees, and transactional costs associated with the ultimate disposition of the automobile, were the natural and probable consequence of the damage done to the automobile, and need not be classified as "special damages." *See Vacco Industries v. Navajo Freight Lines, Inc.*, 63 Cal.App.3d 262, 133 Cal.Rptr. 628, 636 (1976). They are recoverable under section 20(11) as part of the "full actual loss, dam-

age, or injury to such property." *See Olsen v. Railway Express Agency*, 295 F.2d 358 ("full actual loss" includes cost of repair and transportation costs); *Campbell Soup Co. v. Darling Transfer, Inc.*, 193 F.Supp. 408 (D.Neb.1961) (costs incurred to determine salvagability are part of "full actual loss"); *Meletio Seafood Co. v. Gordons Transports*, 191 S.W.2d 983 (Mo.App.1946).

### Punitive Damages

■ Aaacon argues the district court's award of punitive damages was improper under 49 U.S.C. § 20(11) and relevant case law. Section 20(11) specifically provides that "nothing in this section shall deprive any holder of such receipt or a bill of lading of any remedy or right of action which he has under the existing law." In *Adams Express Co. v. Croninger*, 226 U.S. 491, 505, 507, 33 S.Ct. 148, 151, 152, 57 L.Ed. 314 (1912), the Supreme Court held that this proviso continues in existence those common law rights and remedies not inconsistent with the rules and regulations of the Act. In the instant case, suit was brought on common law theories. New Mexico, the state in which the contract was signed and the bailment made, permits punitive damages. *See, e. g., Fredenburgh v. Allied Van Lines, Inc.*, 79 N.M. 593, 446 P.2d 868 (1968).

Further, *Hubbard v. Allied Van Lines, Inc.*, 540 F.2d 1224 (4th Cir. 1976), held section 20(11) does not extinguish a carrier's liability for punitive damages or mental distress.[1] *See also Miller v. Aaacon Auto Transport, Inc.*, 447 F.Supp. 1201 (S.D.Fla. 1978) (punitive damages recoverable under federal common law when carrier acts with actual malice or reckless or wanton indifference to plaintiff's rights). The language: "shall be liable ... for any loss, damage, or injury to such property caused by it," in 49 U.S.C. § 20(11),

"[is] comprehensive enough to embrace *all damages* resulting from any failure to discharge a carrier's duty with respect to any part of the transportation to the agreed destination. It is not necessary, nor is it natural, in view of the general purpose of the statute, to take the words 'to the property' as limiting the word 'damage' as well as the word 'injury,' and thus as rendering the former wholly superfluous."

*New York, P. & N. R.R. v. Peninsula Produce Exch.*, 240 U.S. 34, 38, 36 S.Ct. 230, 232, 60 L.Ed. 511 (1915) (emphasis added). We agree with the *Hubbard* and *Miller* courts that the Carmack Amendment does not preclude awards of punitive damages.

Aaacon asserts that the district court's findings that Aaacon was guilty of "reckless conduct" in the handling of Reed's automobile and "dilatory and wanton conduct" in treating Reed's claims, justifying $2500 punitive damages, are totally unsupported by the record. We do not retry the facts, nor do we reappraise the evidence unless it clearly fails to support the findings of the district court. *Roemer v. Maryland Public Works Bd.*, 426 U.S. 736, 758, 96 S.Ct. 2337, 2350, 49 L.Ed.2d 179 (1976); *McNutt Oil & Refining Co. v. Mimbres Valley Bank*, 174 F.2d 311 (10th Cir. 1949); *Federal Deposit Ins. Corp. v. Barton*, 106 F.2d 737 (10th Cir. 1939). After reviewing the record we cannot say the district court's determination was clearly erroneous.

■ Viewed most favorably to Reed, the record evidence supports a finding that Aaacon ignored Reed's December 14, 1976 letter demanding settlement and commenced a six-month pattern of dilatory and willful conduct to avoid or delay compensating Reed for his loss. Only after being pushed by Reed's attorney did Aaacon reveal that Reed's letter lay dormant in its files because Reed had not completed and submitted an official claim form. Reed's first claim letter described in sufficient detail the facts surrounding the lost Alfa Ro-

---

1. Even though *Chandler v. Aero Mayflower Transit Co.*, 374 F.2d 129 (4th Cir. 1967), the principal case relied upon by Aaacon, is distinguished in *Hubbard*, 540 F.2d at 1229, we do not read it as holding that punitive damages are precluded in all cases under 49 U.S.C. § 20(11). It appears simply to hold they were not justified in that case.

meo and the extent of damages to apprise Aaacon of Reed's valid claim.[2] Aaacon further demonstrated an oppressive and unaccommodating attitude by refusing to cooperate with Reed's original request that Alamo Sports Cars, the only franchised Alfa Romeo dealer in San Antonio, Texas, perform the necessary repairs. Aaacon also inflexibly insisted on simply repairing the car after experts had determined the car was so damaged it could not have been completely repaired so as to restore it to its original condition and value. The court could find Aaacon forced Reed into an evasive and wearying contest of patience and grit. The $2500 punitive damages awarded was not so excessive or inadequate as to shock the conscience of this Court. *See Barnes v. Smith*, 305 F.2d 226 (10th Cir. 1962). We therefore affirm that award.

### Attorneys' Fees

 We turn now to Reed's cross-appeal seeking reversal of the trial court's refusal to award him attorneys' fees. The American rule consistently applied in this Circuit is that in the absence of contractual or statutory liability therefor, attorneys' fees and related expenses are not recoverable as an element of damages. *Alyeska Pipeline Co. v. Wilderness Soc'y*, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Wilshire Oil Co. v. Riffe*, 409 F.2d 1277 (10th Cir. 1969). The trial judge in *Miller v. Aaacon Auto Transport, Inc.*, found an award against Aaacon appropriate under the equitable powers exception recognized in *Alyeska*. 447 F.Supp. at 1206–07. The trial court here did not, and we cannot say this is a case in which that court was required to make such an award in the interests of justice.

 Reed asserts, however, that section 8 of the Interstate Commerce Act applies, to permit recovery of attorneys' fees here.

"In case any common carrier subject to the provisions of this chapter shall do, cause to be done, or permit to be done any act, matter, or thing in this chapter prohibited or declared to be unlawful, or shall omit to do any act, matter, or thing in this chapter required to be done, such common carrier shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this chapter, *together with a reasonable counsel or attorney's fee*, to be fixed by the court in every case of recovery, which attorney's fee shall be taxed and collected as part of the costs in the case."

49 U.S.C. § 8 (emphasis added). He points out that the Interstate Commerce Commission, pursuant to 49 U.S.C. § 12(1), has promulgated regulations governing the manner in which damage and loss claims are to be filed and the proper manner for disposing of such claims. 49 C.F.R. § 1005.5 (1979) provides in pertinent part:

"Each carrier subject to the Interstate Commerce Act which receives a written claim for ... loss, damage, injury, or delay to property transported shall pay, decline, or make a firm compromise settlement offer in writing to the claimant within 120 days after receipt of the claim by the carrier."

Reed then argues that Aaacon neither paid, declined, nor offered a firm compromise settlement. Alternatively, assuming Aaacon's letter of April 20, 1977, constituted a firm compromise settlement offer, Reed ob-

---

**2.** It is well established that the written claim requirement of section 2(B) of the Uniform Straight Bill of Lading, incorporated by reference in Aaacon's "freight bill-order form," is satisfied if the written "instruments [supply] 'sufficient information upon which a prompt and complete investigation can be based,'" *Thompson v. James G. McCarrick Co.*, 205 F.2d 897, 901, (5th Cir. 1953) (quoting *Minot Bever-*

age Co. v. Minneapolis & St. L. Ry., 65 F.Supp. 293, 296 (D.Minn.1946). *See also Georgia, Fla. & Ala. Ry. v. Blish Milling Co.*, 241 U.S. 190, 197, 36 S.Ct. 541, 544, 60 L.Ed. 948 (1916); *Miller v. Aaacon Auto Transport, Inc.*, 447 F.Supp. 1201 (S.D.Fla.1978) (there is no requirement that a written claim be filed in any particular form).

serves that the letter was nevertheless drafted 121 days following Aaacon's receipt of Reed's written claim on December 20, 1976.

The Supreme Court has declared, however, that section 8 only "applies to cases where the cause of action is the doing of something made unlawful by some provision of the act, or the omission to do something required by the act, and there is a recovery 'of damages sustained in consequence of any such violation of this act.'" *Atlantic Coast Line R.R. v. Riverside Mills*, 219 U.S. 186, 208, 31 S.Ct. 164, 171, 55 L.Ed. 167 (1911). In that case, as here, "the cause of action was the loss of plaintiff's property which had been intrusted to it [defendant] as a common carrier, and that loss is in no way traceable to the violation of any provision of the act to regulate commerce." 219 U.S. at 208, 31 S.Ct. at 171.[3] We believe Reed's recovery of consequential and special damages, the natural and probable result of Aaacon's failure to deliver the automobile, is traceable to an actual property loss rather than to Aaacon's noncompliance with 49 C.F.R. § 1005.5.

Although we recognize that Reed incurred substantial attorneys' fees to pursue his just claim, we must affirm the denial of their recovery in these circumstances.

AFFIRMED.

---

**3.** In *Atlantic Coast Line R.R. v. Riverside Mills*, as here, the carrier had inserted a limitation on its liability found to be invalid under the Carmack Amendment.