HECTOR MARTINEZ AND COMPANY,
Plaintiff-Appellant,

v.

SOUTHERN PACIFIC TRANSPORTA-
TION CO., Defendant-Appellee.

No. 77–2793.

United States Court of Appeals,
Fifth Circuit.

Nov. 8, 1979.

Rehearing and Rehearing En Banc
Denied Dec. 20, 1979.

Paul J. Chitwood, Dallas, Tex., for plaintiff-appellant.

Howard P. Newton, San Antonio, Tex., for defendant-appellee.

Before WISDOM, HILL and VANCE, Circuit Judges.

VANCE, Circuit Judge:

Martinez appeals the trial court's dismissal of his claim under 49 U.S.C. § 20(11) (Carmack Amendment to the Interstate Commerce Act) for losses resulting from delay and damage in transportation by carrier Southern Pacific. The district court granted Southern Pacific's motion under Rule 12(b)(6) to dismiss the claim for delay damages. It held that such damages are special and Martinez failed to allege that the carrier had any notice of the possibility that such damages would accrue upon a breach of the contract between the parties. We reverse and remand for trial on the claim for some but not all of the damages sought.

Martinez's agent delivered a 2400 Lima Dragline, Model 66, to the Penn Central Railroad, the origin carrier, on February 11, 1974, for shipment from New Philadelphia, Ohio to Eagle Pass, Texas. The dragline was loaded onto five separate railroad cars. A single uniform bill of lading, which described the dragline as "used strip mining machinery and parts," was issued by Penn Central, listing Martinez's agent in Eagle Pass as the consignee.

The last of the five cars, which were shipped separately, arrived in Eagle Pass on April 2, 1974. Martinez had to make reasonable repairs in the amount of $14,467.00 because the dragline was damaged in transit. These repairs were not completed until June 20, 1974. Martinez also alleges delay damages in the amount of $117,600.00 because the dragline could not be used from March 1, when he contends that the last of the cars should have arrived, until June 20. The claimed sum represents the dragline's fair rental value during this period.

After filing a claim as prescribed by the bill of lading, Martinez sued Southern Pacific, which as delivering carrier is liable for all recoverable damages. Martinez framed his original complaint to allege three separate claims under the Carmack Amendment. First, Martinez sought recovery of the cost of repairing the damage to the

dragline. Second, he sought the refund of certain demurrage or storage charges assessed by Southern Pacific and paid at the time of delivery. Third, Martinez sought compensation for wrongful deprivation of the dragline's use during the periods of delay in transit and of repair.

Martinez and Southern Pacific had already settled the first two of these claims, when Southern Pacific filed its Rule 12(b)(6) motion to dismiss the third claim for loss of use. Southern Pacific argues that, because such damages are special, they are not recoverable under the Carmack Amendment absent notice of the possibility of such damages. The trial court denied this motion upon condition that Martinez amend his complaint to allege such notice. When Martinez refused, the district court granted Southern Pacific's motion under Rule 12(b)(6). This ruling, which had the effect of dismissing all that remained of Martinez's suit, is the basis of this appeal.

■ Martinez's delay claim involves two very different items. Lost use during the period of March 1 until April 2 resulted from a delay in transit. Lost use from April 2 until June 20 resulted from repair of the damaged goods. Neither the parties nor the district court have focused on the full import of this distinction. Martinez's claimed loss during repair is not severable from the physical damage to the dragline but is a part of the same legal claim. Thus Martinez necessarily settled his claim regarding damages for the repair period when he settled his first claim for damages to the

dragline. The surviving issue is the appropriate measure of damages for the claimed loss resulting from Southern Pacific's unreasonable delay in transportation.

■ The Carmack Amendment [1] governs Martinez's claim for damages resulting from the delay in transit. That amendment incorporates common law principles for damages. *F. J. McCarty Co. v. Southern Pacific Co.*, 428 F.2d 690, 693 (9th Cir. 1970); *L. E. Whitlock Truck Service, Inc. v. Regal Drilling Co.*, 333 F.2d 488, 491 (10th Cir. 1964); *J & H Flyer Inc. v. Pennsylvania Rr.*, 316 F.2d 203, 205 (2d Cir. 1963). In applying that statute, we first examine the extent to which the innocent party actually has been injured by the alleged breach. This inquiry assists in determining how the innocent party can be restored to the position in which he would have been had the contract been fully performed. *See Liberty Navigation & Trading Co. v. Kinoshita & Co.*, 285 F.2d 343, 350 (2d Cir. 1960) (Lumbard, C. J., concurring in relevant part), *cert. denied*, 366 U.S. 949, 81 S.Ct. 1904, 6 L.Ed.2d 1242 (1961); 11 *Williston on Contracts* § 1338, at 198 (3d ed. W. Jaeger 1968).

[3–5] Normally, the remedy is an award of money damages to the aggrieved party as compensation for his economic injury.[2] This rule in effect protects the innocent party's expectation interest, giving him the "benefit of the bargain."[3] Martinez's alleged injury in this case was deprivation of the dragline's use between March 1, when it should have been delivered, and April 2.

---

1. The Carmack Amendment, 49 U.S.C. § 20(11), provides that any common carrier subject to the provisions of the Interstate Commerce Act, such as Southern Pacific, who receives property for transportation in interstate commerce shall be liable for damages it causes in the amount of "the full actual loss, damage or injury" suffered. Federal law controls our determination of liability and the measure of damages, *Dublin Co. v. Ryder Truck Lines, Inc.*, 417 F.2d 777, 778 (5th Cir. 1969), although it adopts common law principles.

2. In some situations in which money damages cannot adequately compensate the innocent party, the court may order specific performance of the contract.

3. Damages may be awarded for the expectation interest, the reliance interest, or the restitution interest of the aggrieved party. Fuller & Perdue, *The Reliance Interest in Contract Damages* (pts. 1–2), 46 Yale L.J. 52, 373 (1936–1937); J. Calamari & J. Perillo, *Contracts* § 205, at 328–29 (1970). If it is impossible to calculate a plaintiff's expectation interest, courts award damages to protect his reliance interest, to restore him to his position before the contract was entered. If reliance damages do not represent a fair measure of recovery, courts calculate damages on the basis of the restitution interest, to restore the benefit received from the plaintiff's performance.

Besides compensating the injured plaintiff, the common law also seeks to protect the defendant from unforeseeable large losses to the plaintiff.[4] This limitation makes good sense. An award of full compensation for all of the plaintiff's losses due to the breach, no matter how unforeseeable or bizarre these losses are, would simply be unfair to the defendant as well as possibly paralyzing to commerce.

■ We next assess the reasonable foreseeability of the plaintiff's actual injury at the time of entry into the contract—here the bill of lading. *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 544, 23 S.Ct. 754, 47 L.Ed. 1171 (1903); *De Fore v. United States*, 145 F.Supp. 484, 491 (M.D. Ga.1956), aff'd sub nom. *Georgia Kaolin Co. v. United States*, 249 F.2d 148 (5th Cir. 1957). Our analysis on this point begins with *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1854). There, mill operators were forced to close operations to ship a broken shaft for repairs, and the carrier negligently delayed shipment. The carrier, however, had not been informed of the situation at the mill. The court refused to award profits lost during the period of delay because such damages were not in the contemplation of the parties. The court articulated the rules, still almost universally followed,[5] that general damages are awarded only if injury were foreseeable to a reasonable man and that special damages are awarded only if actual notice were given the carrier of the possibility of injury.[6] Damage is foreseeable by the carrier if it is the proximate and usual consequence of the carrier's action. 11 *Williston on Contracts, supra* § 1344, at 226.

■ Martinez asserts that his loss resulting from the delay in shipment was reasonably foreseeable when he entered the contract to transport his dragline. *Hadley* held that the damages arising from an inoperative mill were not foreseeable results of delayed shipment of a shaft, without specific notice. It was not obvious that the shaft in *Hadley* was an indispensable element of a mill. In the instant case, however, it was obvious that the dragline is a machine which of itself has a use value. Some cases after *Hadley* have suggested that the injury resulting from loss of a machine's use are not foreseeable results of delayed transport, because it is not a usual consequence although it is a proximate consequence. *See* 11 *Williston on Contracts, supra* § 1344, at 226–27. These decisions are unwarranted extensions of *Hadley* and employ arbitrary and inflexible definitions of foreseeability. Capital goods such as machinery have a use value, which may equal the rental value of the equipment or may be an interest value. The latter is ordinarily interest at the market rate on the value of the machine. It might be quite foreseeable that deprivation of the machine's use because of a carriage delay will cause a loss of rental value or interest value during the delay period.[7]

---

**4.** In addition to the foreseeability limitation, damages may also be limited because of uncertainty, *e. g., United States v. Huff*, 175 F.2d 678, 680 (5th Cir. 1949), or because of failure to mitigate damages, *e. g., De Fore v. United States*, 145 F.Supp. 484, 493 (M.D.Ga.1956), aff'd sub nom. *Georgia Kaolin Co. v. United States*, 249 F.2d 148 (5th Cir. 1957).

**5.** J. Calamari & J. Perillo, *supra* note 3, at 329. As Professor Gilmore admonished, *Hadley* "has meant all things to all men." G. Gilmore, *The Death of Contract* 50 (1974).

**6.** There are two tests for determining special damages. The more restrictive test requires proof both that notice was given of special circumstances and that the defendant impliedly or expressly assented to bearing the risk of these damages. *Globe Refining Co. v. Landa Cotton Oil Co.*, 190 U.S. 540, 23 S.Ct. 754, 47

L.Ed. 1171 (1903). The more common test rejects the added showing of a tacit agreement for special damages. *E. g., L. E. Whitlock Truck Svc., Inc. v. Regal Drilling Co.*, 333 F.2d at 492; U.C.C. § 2–715, Comment 2.

**7.** Unlike loss of use, Martinez would have had to plead notice had he sought to recover for a variety of damages that could not have been foreseeable here such as lost profits, the cost of idle labor hired to operate the dragline, the cost of idle equipment that had been rented to be used with the dragline, or the daily royalties Martinez was paying for the land on which he planned to run his dragline. *Cf. Texas Instruments, Inc. v. Branch Motor Express Co.*, 308 F.Supp. 1228, 1230 (D.Mass.), aff'd, 432 F.2d 564 (1st Cir. 1970) (unforeseeable consequences of delay due to total destruction of machinery in transit). Thus Martinez may re-

*See generally* F. Kessler & G. Gilmore, *Contracts* 1042 (2d ed. 1970). We must not lose sight of the basic common law rule, enunciated in *Hadley,* of damages for foreseeable loss. The amount of damages that was reasonably foreseeable involves a fact question that Martinez is entitled to present to a jury.

■ Southern Pacific replies that it was as foreseeable that the goods were to be sold as that they were to be used. This contention proves too much because *Hadley* allows recovery for harms that should have been foreseen. The general rule does not require the plaintiff to show that the actual harm suffered was the *most* foreseeable of possible harms. He need only demonstrate that his harm was not so remote as to make it unforeseeable to a reasonable man at the time of contracting. Even if the dragline were being shipped for sale it does not follow that delay in shipment would cause no recoverable loss.

Southern Pacific argues that, because only market value damages are foreseeable under common law, damages for lost rental value must be special and therefore require notice by Martinez. This argument confuses one common law method for computing damages with the underlying common law rule of awarding reasonable compensation for foreseeable injury from a contract's breach.

■ The common law employs a number of methods for computing damages recoverable for unreasonable delay in shipment. One of these is the market value test that measures damages by the diminution in the goods' value between the time of dispatch and the time of actual delivery. *See* 11 *Williston on Contracts, supra* § 1342, at 223. That test, however, "is merely a method," and it "is not applied in cases where . . . another rule will better compute actual damages." *Great Atlantic & Pacific Tea Co. v. Atchison, T. & Ste. F. Ry.,* 333 F.2d 705, 708 (7th Cir. 1964), *cert. denied,* 379 U.S. 967, 85 S.Ct. 661, 13 L.Ed.2d 560 (1965). *Accord, Olsen v. Railway Express Agency, Inc.,* 295 F.2d 358, 359 (10th Cir. 1961). *Cf. Illinois Cent. Ry. v. Crail,* 281 U.S. 57, 64–65, 50 S.Ct. 180, 74 L.Ed. 699 (1930) (Cummins Amendment). Lost rental value is frequently an appropriate measure of damages from a delay in shipment of machinery.[8] *See Resolute Ins. Co. v. Percy Jones, Inc.,* 198 F.2d 309, 312 (10th Cir. 1952). *E. g., Burlington Northern Inc. v. United States,* 462 F.2d 526, 529–30, 199 Ct.Cl. 143 (1972); *New Orleans & N. E. R. v. J. H. Miner Saw Mfg. Co.,* 117 Miss. 646, 78 So. 577, 578 (1918). In deciding which measure of damage to apply, courts look to the actual loss suffered by the plaintiff and the common law rule of compensating that loss.

> There is only one rule, of universal application, . . . and that is to give compensation for the loss suffered. Frequently, this ideal is found impossible of complete attainment; perhaps generally the market value rule is found to be the nearest approach to reaching the actual loss. But the market value rule is inapplicable when, on the facts, it is not the nearest practicable approach to an ascertainment of the actual loss. Each case must be governed by its own facts.

*Fort Worth & D. Ry. v. United States,* 242 F.2d 702, 705 (5th Cir. 1957) (livestock feed); *Reider v. Thompson,* 197 F.2d 158, 160 (5th Cir. 1952) (sheepskins). However, this test is generally not as accurate a measure of injury from a delay in transport of capital goods, with an ascertainable rental value for the machinery or interest value of the invested sum. Otherwise, a carrier could breach its contractual duties with impunity as long as the market value of the equipment did not drop, even though the shipper might lose a substantial use value or pay high installment purchase costs.

---

cover for lost use of the machine but not for the costs of the mining operations in which the machine was to be involved. Similarly, *Hadley* held that one cannot equate a shaft with the operation of an entire mill unless notice of the shaft's use had been given to the carrier. The result in *Hadley* might have been different had the plaintiff sought to recover solely for the loss of use of the shaft.

**8.** Diminution in market value is a proper measure of damages from a delay in carriage of food and other non-rentable goods. *E. g., Gulf, C., & Ste. F. Ry. v. Texas Packing Co.,* 244 U.S. 31, 37, 37 S.Ct. 487, 61 L.Ed. 970 (1917) (poultry);

*United States v. Palmer & Parker Co.*, 61 F.2d 455, 459 (1st Cir. 1932). The Carmack Amendment, in compensating the aggrieved party's "full actual loss," does not restrict the measure of damages solely to the diminution in value of the goods involved. *Great Atlantic & Pacific Tea Co. v. Atchison, T. & Ste. F. Ry.*, 333 F.2d at 708–09.[9]

Martinez has stated a claim for damages resulting from the delay in shipment. We reverse the district court's order of dismissal on this point, and remand for trial. We affirm, however, the district court's decision to dismiss Martinez's claim for damages resulting from the delay during repair.

REVERSED AND REMANDED IN PART; AFFIRMED IN PART.

---

**9.** This holding should hardly surprise Southern Pacific. *F. J. McCarty Co. v. Southern Pacific Co.*, 428 F.2d 690 (9th Cir. 1970) (rejecting Southern Pacific's arguments for market value test and against "special damages").