PEDRO JUAN SOTO y su esposa DOÑA CARMEN LUGO FILIPPI, demandantes y recurridos, *v.* CARIBE SHIPPING COMPANY, INC., demandada y recurrente.

*Número:* RE-93-402    *Resuelto:* 10 de mayo de 1996

*Harry Anduze Montaño* y *Efraín Guzmán Mollet,* abogados de los recurridos; *Marcos Rodríguez Fresse,* abogado de la recurrente.

— O —

Opinión disidente del Juez Asociado Señor Corrada Del
    Río, a la cual se unen el Juez Asociado Señor Rebollo
    López y la Juez Asociada Señora Naveira de Rodón.

Este recurso plantea la interrogante de si según la Ley
Harter, 46 U.S.C. secs. 190–196, procede la concesión de
daños en concepto de angustias mentales que fueron sufri-
das como consecuencia de la pérdida de una mercancía
transportada por vía marítima desde España, cuyo arribo
no le fue notificado a sus propietarios, por lo que fue en-
viada a un almacén de depósito y posteriormente destruida
por un incendio. Resolveríamos dicha interrogante en la
negativa, por no proceder bajo el derecho marítimo federal,
como regla general, la concesión de los daños consecuentes
(*consequential damages*).

I

El caso de autos es una secuela de la opinión de este
Tribunal en *Soto v. Caribe Shipping Co., Inc.*, 128 D.P.R.
385 (1991). Se trata de una demanda incoada el 21 de abril
de 1977 por los esposos Soto-Lugo contra la compañía esti-
badora Caribe Shipping Co., Inc., en la que reclamaron
daños materiales y morales sufridos por la pérdida de un
baúl embarcado desde Zaragoza, España; el cual contenía
efectos personales, el producto de dos (2) años de investi-
gación académica conducente al grado de doctorado por la
codemandante Lugo y de planes, apuntes, notas y borrado-
res para tres (3) libros del codemandante Soto, quien es un
escritor reconocido. Se alegó que la parte demandada no
les notificó del arribo del baúl al puerto de San Juan, por lo
que éste fue enviado a un almacén de depósito, el cual fue
destruido posteriormente por un incendio, perdiendo así
sus pertenencias.

Luego de varios trámites procesales el tribunal de instancia desestimó la demanda por lo que los demandantes acudieron ante este Tribunal, lo que dio origen a la opinión que emitiéramos en *Soto v. Caribe Shipping Co., Inc.*, supra, en el que dejamos sin efecto la sentencia desestimatoria y resolvimos que la causa de acción se rige por la Ley Harter, *supra*, teniendo los tribunales de Puerto Rico jurisdicción concurrente sobre el asunto, que no era aplicable el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por no ser un caso apropiado en el cual los tribunales locales puedan poner en vigor legislación estatal que no contravenga los principios del derecho marítimo federal. Resolvimos, además, que la Ley Harter dispone que la responsabilidad del porteador no termina cuando la mercancía es descargada, sino que ella se extiende hasta que ocurra una entrega apropiada. Sin embargo, en el caso de autos no hubo entrega real ni constructiva de la mercancía, ya que el codemandante Soto no tuvo la posesión o el control físico de sus bienes ni tampoco recibió la notificación debida de que su mercancía había llegado, de forma que tuviera una oportunidad razonable de recogerla. Puesto que hasta tanto no se efectúa la entrega apropiada, la Ley Harter hace responsable al porteador por los daños y perjuicios contractuales ocasionadas con la pérdida de la mercancía. A base de lo anterior, revocamos la sentencia desestimatoria y devolvimos el caso al tribunal de instancia para que se adjudicaran los daños.

Devuelto el caso al tribunal de instancia se decretó la nulidad de la limitación de responsabilidad del porteador contenida en el contrato de embarque, por ser inferior al mínimo de quinientos dólares ($500) que establece la Ley federal *Carriage of Goods by Sea Act*, 46 U.S.C. sec. 1300 *et seq.* (C.O.G.S.A.).

Se celebró la vista por daños, donde la parte demandante presentó los testimonios del editor Francisco Vázquez López, el profesor y escritor Emilio Díaz Valcárcel, así

como los testimonios de los demandantes Pedro Juan Soto y su esposa Carmen Lugo Filippi. Asimismo se ofreció prueba documental consistente en cuatro (4) contratos de autorización para uso de la propiedad literaria, suscritos por el codemandante Soto y el señor Vázquez López, otorgados entre los años 1972–1985. La parte demandada no ofreció prueba, limitándose a contrainterrogar a los testigos.

Así las cosas, el 14 de julio de 1993 el entonces Tribunal Superior de Puerto Rico, Sala de Carolina (Hon. Carmen Rita Vélez Borrás, Juez), dictó una sentencia que condenó a la parte demandada a pagar la suma de diez mil dólares ($10,000) al codemandante Soto y quince mil dólares ($15,000) a la codemandante Lugo, en concepto de angustias mentales. Además, concluyó que la prueba ofrecida por la parte demandante para establecer las obras literarias que el señor Soto pudo haber publicado fundamentándose en las anotaciones perdidas fue especulativa, así como también lo fue la prueba aportada para apoyar su reclamación en concepto de los beneficios económicos que pudo haber recibido de haber publicado las obras literarias que pensaba escribir. Asimismo, concedió a la codemandante Lugo la suma de doscientos dólares ($200) por el valor de dos (2) libros de crítica en francés que no eran de fácil adquisición en Puerto Rico. Finalmente, concluyó el tribunal de instancia que la parte demandante no puso al tribunal en posición de cuantificar los daños sufridos como resultado de la pérdida de otros efectos personales que se encontraban en el baúl, ya que no aportaron una evidencia creíble. Se concedió además la suma de setecientos dólares ($700) en concepto de honorarios de abogado.

No conforme, acudió ante nos la demandada Caribe Shipping Co., Inc. y formula los señalamientos de error siguientes:

1. ERRÓ EL TRIBUNAL SUPERIOR AL IMPONER $25,000.00 EN DAÑOS Y PERJUICIOS POR CONCEPTO DE

ANGUSTIAS Y SUFRIMIENTOS MENTALES POR LA PÉR-
DIDA DE BIENES MUEBLES BAJO EL ART. 1802 [DEL CÓ-
DIGO CIVIL], EN CONTRAVENCIÓN AL MANDATO EX-
PRESO DEL TRIBUNAL SUPREMO, QUIEN ESTABLECIÓ
QUE ESTA DISPOSICIÓN NO APLICABA AL CASO DE
AUTOS.
    2. ERRÓ EL TRIBUNAL SUPERIOR AL IMPONER
$25,000.00 EN DAÑOS Y PERJUICIOS POR CONCEPTO DE
ANGUSTIAS Y SUFRIMIENTOS MENTALES TODA VEZ
QUE LA DOCTRINA BAJO LA LEY HARTER SÓLO PER-
MITE COMPENSACIÓN POR VALORACIÓN ECONÓMICA
DE LOS BIENES PERDIDOS Y NO SE COMPENSA POR DA-
ÑOS Y PERJUICIOS POR CONCEPTO DE ALEGADOS DA-
ÑOS EMOCIONALES.
    3. ERRÓ EL TRIBUNAL DE INSTANCIA AL DETERMI-
NAR IMPONER HONORARIOS DE ABOGADO, PUES NO
HUBO NI SE HIZO DETERMINACIÓN ALGUNA DE
TEMERIDAD. Alegato, págs. 5–6.

Expedimos el recurso. En el día de hoy, y por estar
igualmente divididos los jueces de este Tribunal que inter-
vienen en el caso, se emite una sentencia confirmatoria.
Discrepamos.

## II

De un examen de la sentencia emitida por el foro de
instancia nos percatamos que de ninguna forma se intima
que la concesión de daños en concepto de angustias men-
tales estuvo predicada según el Art. 1802 del Código Civil,
*supra*, por lo que carece de validez el primer señalamiento
de error formulado por la demandada recurrente a dichos
efectos. En *Soto v. Caribe Shipping Co., Inc.*, supra, pág.
399, resolvimos la controversia sobre la aplicabilidad del
Art. 1802 del Código Civil, *supra*, al caso de autos, al con-
cluir que "[t]ampoco es de aplicación la ley local, en parti-
cular el Art. 1802 del Código Civil, *supra*, al caso de autos.
Este no es un caso apropiado donde los tribunales locales
puedan poner en vigor legislación estatal que no contra-
venga los principios del derecho marítimo federal. *León v.
Transconex Inc.*, [119 D.P.R. 102 (1987)]. Aquí se trata de

una reclamación por daños sufridos por el alegado incumplimiento de una obligación contractual del contrato de embarque marítimo cuya génesis es del deber impuesto al estibador por la autoridad conferida por legislación del derecho marítimo federal, en este caso particular, la Ley Harter". Por ende, queda la controversia limitada a resolver si según la Ley Harter procede la concesión de daños en concepto de angustias mentales sufridas como consecuencia de la pérdida de una mercancía transportada por vía marítima desde España, cuyo arribo no le fue notificado a sus propietarios, por lo que fue enviada a un almacén de depósito y destruida por un incendio. Procede resolver que tales daños no proceden según el derecho marítimo federal. Veamos.

La Sec. 1 de la Ley Harter, 46 U.S.C. sec. 190, dispone que:

> It shall not be lawful for the manager, agent, master, or owner of any vessel transporting merchandise or property from or between ports of the United States and foreign ports to insert in any bill of lading or shipping document any clause, covenant, or agreement whereby it, he, or they shall be relieved from liability for loss or damage arising from negligence, fault, or failure in proper loading, stowage, custody, care, or proper delivery of any and all lawful merchandise or property committed to its or their charge. Any and all words or clauses of such import inserted in bills of lading or shipping receipts shall be null and void and of no effect.

Tal disposición le impone una responsabilidad al porteador por los daños derivados de su propia culpa al cargar, custodiar o entregar mercancía, y declara nulos aquellos acuerdos a los efectos de exonerar al porteador de dichas obligaciones. No obstante, la Ley Harter no contiene disposición alguna que provea para la valorización o cuantificación de los daños.[1] Por ende, es necesario acudir a los tratadistas y la jurisprudencia en Estados Unidos. Nótese

---

[1] Véase H. Baer, *Admiralty Law of the Supreme Court*, 3ra ed., Virginia, Ed. Michie, 1979, Cap. 18, pág. 533.

que a los casos de naturaleza marítima les aplica el derecho marítimo federal, siendo deseable mantener una uniformidad en esta área del derecho. Véase *León v. Transconex, Inc.*, 119 D.P.R. 102, 113 (1987).

Sobre el particular, nos señala William Tetley[2] que:

In 1854, two basic common law rules for the measure of damages in all breach of contract claims were enunciated in the landmark decision of *Hadley v. Baxendale*[3]:

(i) "Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally, i.e, according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probable result of the breach of it".

(ii) "Now, if the special circumstances under which the contract was actually made were communicated by the plaintiffs to the defendants, and thus known to both parties, the damages resulting from the breach of such a contract, which they would reasonably contemplate, would be the amount of injury which would ordinarily follow from a breach of contract under these special circumstances so known and communicated."

The two rules of *Hadley v. Baxendale* have been followed by the courts of many nations and may be summarized as follows: Damages for breach of a contract of carriage are therefore those:

(i) damages which arise naturally i.e., damages which arise naturally from the breach or which, at the time contract was made, the carrier knew or should reasonably be expected to have known would arise from a breach.

(ii) damages which arise from special circumstances i.e., damages which arise from special circumstances communicated to the carrier at the time of making the contract. (Escolio omitido.)[4]

De otra parte, examinada la jurisprudencia de Estados

---

[2] W. Tetley, *Marine Cargo Claims*, 3ra ed., Montreal, Ed. Int. Shipping Pubs., 1988, Cap. 12, págs. 320–321.

[3] 9 Ex. C. 341, 354–55, 156 Eng. Rep. 145, 151 (1854).

[4] Véase, además, G.L. Waddell, *Damages In Cargo Cases, Damages Recoverable in Maritime Matters*, Standing Committee on Admiralty and Maritime Law and Tort and Insurance Practice Section, American Bar Association, 1984, págs. 44–45.

Unidos, nos encontramos que en *B.F. McKernin & Co., Inc. v. U.S. Lines, Inc.*, 416 F. Supp. 1068 (S.D. N.Y. 1976), la parte demandante reclamaba por la pérdida de plusvalía, los futuros negocios y la reputación comercial como consecuencia del envío tardío de una mercancía. El Tribunal federal resolvió que para poder reclamar daños consecuentes era necesario que el demandante probara que la parte demandada, al momento de otorgar el contrato, tenía conocimiento de la necesidad de enviar la mercancía a tiempo para la venta de temporada de Navidad. Aplicando las normas establecidas en *Hadley v. Baxendale*, 9 Ex. C. 341, 354–355, 156 Eng. Rep. 145, 151 (1854), el Tribunal concedió sentencia sumaria a favor de la parte demandada fundamentada en que no había evidencia de que dicha parte tenía conocimiento de alguna circunstancia que ameritara el pronto envío de la mercancía.

Por otro lado, en *Santiago v. Sea-Land Service, Inc.*, 366 F. Supp. 1309 (D. P.R. 1973), se señaló que la norma es que los daños consecuentes sufridos por el cargador o dueño de la mercancía no son reclamables contra el porteador, siendo la única medida de los daños el valor en el mercado en el puerto de destino de la mercancía. Allí fueron discutidos los casos en los cuales dichos daños se han concedido, siendo éstos en los que medien las circunstancias especiales esbozadas en *Hadley v. Baxendale*, supra, o cuando un porteador ilegalmente niega el espacio en la embarcación en violación a la *United States Shipping Act*, 46 U.S.C. sec. 801 *et seq.*([5]) A base de lo anterior el Tribunal determinó que no eran reclamables, como cuestión de derecho, los daños por concepto de la pérdida de la oportunidad y el beneficio de utilizar el automóvil que no llegó a su destino, así como tampoco eran reclamables las alegadas angustias mentales sufridas por tal privación.([6])

---

([5]) *Consolo v. Federal Maritime Commission*, 383 U.S. 607 (1966).

([6]) Véase, además, *Hector Martinez & Co. v. Southern Pacific Transp.*, 606 F.2d 106 (5to Cir. 1979).

Considerando las normas antes discutidas, hemos examinado los autos originales del caso. En particular hemos evaluado el contrato de embarque, y no surge de éste que se haya puesto al porteador en conocimiento de circunstancia alguna que ameritara la concesión de daños en concepto de angustias mentales. En dicho contrato meramente se hizo constar que el baúl contenía efectos personales. Tampoco se puso en conocimiento al porteador del valor de la mercancía transportada, a los efectos de que conociera el riesgo monetario por su pérdida. Por ende, concluimos que no procede la concesión de los daños concedidos por angustias mentales, por lo que procede revocar las partidas concedidas por dicho concepto, quedando inalterada la partida de doscientos dólares ($200) en concepto de los libros de crítica en francés que no eran de fácil adquisición en Puerto Rico. Esto puesto que conforme a la interpretación de los tribunales en Estados Unidos, en estos casos procede la compensación por la pérdida de la mercancía transportada. Véanse: *San Giorgio I v. Rheinstrom Bros. Co.*, 294 U.S. 494 (1935); *St. Johns Corp. v. Companhia Geral, etc.*, 263 U.S. 119 (1923).[7]

## III

Por último, se aduce que erró el tribunal de instancia al determinar la imposición de honorarios de abogado, pues no hubo ni se hizo determinación alguna de temeridad. Dicho error no fue cometido. Veamos.

En primer lugar, la conclusión de temeridad no tiene que ser explícita en la sentencia, puesto que cuando en ésta se imponen honorarios de abogado se presume que la

---

[7] En cuanto a si procedían los daños por la pérdida de las anotaciones del codemandante Soto y los estudios de tesis de la codemandante Lugo; esto es, la mercancía perdida, nos vemos impedidos de considerar si erró el tribunal de instancia al determinar si eran especulativos puesto que los demandantes no acudieron ante nos para solicitar la revisión de tal determinación, ni contamos con una transcripción de la evidencia desfilada ante el tribunal de instancia.

conclusión está implícita en la sentencia. Véanse: *Sucn. Arroyo v. Municipio*, 81 D.P.R. 434 (1959); *Montañez Cruz v. Metropolitan Cons. Corp.*, 87 D.P.R. 38 (1962); *Insurance Co. of P.R. v. Tribunal Superior*, 100 D.P.R. 405 (1972).

En segundo lugar, los honorarios de abogado se conceden por temeridad y dependen de la discreción del tribunal sentenciador. En ausencia de abuso de discreción al imputarle temeridad a una parte, el tribunal apelativo no intervendrá con tal apreciación. Véanse: *Montañez Cruz v. Metropolitan Cons. Corp.*, supra; *Boyd v. Tribunal Superior*, 101 D.P.R. 651 (1973); *Revlon v. Las Américas Trust Co.*, 135 D.P.R. 363 (1994); *Miranda v. E.L.A.*, 137 D.P.R. 700 (1994).

Aplicando lo anterior al caso de autos, encontramos que el tribunal de instancia no abusó de su discreción al imponer el pago de setecientos dólares ($700) en concepto de honorarios de abogado. Nótese que este caso data de 1977, que no hay duda que los demandantes perdieron sus pertenencias en un incendio, lo cual fue producto de la negligencia del porteador, según determináramos en *Soto v. Caribe Shipping Co., Inc.*, supra. Además, los demandantes tuvieron que incoar una demanda por daños y perjuicios para recuperar los doscientos dólares ($200) que le fueron adjudicados por la pérdida de dos (2) libros de crítica en francés de difícil adquisición en Puerto Rico.

En consecuencia, por los fundamentos antes discutidos modificaríamos la sentencia recurrida a los efectos de revocar las partidas concedidas en concepto de angustias mentales, y así modificada confirmaríamos.